IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | In Chapter 11 |
| | ) | Case No 05 B 20358 |
| TARCO PRINTING CO., INC., | ) | Judge Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | |

AGREED FINAL ORDER PERMITTING
USE OF CASH COLLATERAL

THIS CAUSE COMING ON TO BE HEARD for final hearing on motion of Debtor and Debtor in Possession, TARCO PRINTING CO., INC. ("Debtor"), to enter an order permitting it to provide adequate protection to BLOOMINGDALE BANK AND TRUST (the "Motion"), the Court having scheduled a final hearing concerning the Debtor's authorization to use cash collateral and the Court being duly advised in the premises; and

THE DEBTOR HAVING STIPULATED TO THE COURT that:

1. On May 20, 2005 ("Petition Date"), Debtor filed a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

2. The Debtor is a corporation with its principal place of business at 1270 Ardmore Avenue, Itasca, Illinois. Debtor operates a printing company.

3. On or about June 16, 2003, Debtor executed an installment promissory note in the amount of $2,598,967.09 in favor of Bloomingdale. On or about September 19, 2004, Debtor executed a revolving note in the amount of $1,000,000.00 in favor of Bloomingdale. The obligations evidenced by these notes and the security agreement referenced below are the "Pre-Petition Obligations".

4. Debtor executed a Security Agreement granting Bloomingdale a security interest ("Pre-Petition Liens") in all of Debtor's assets, including the proceeds and products thereof ("Pre-Petition Collateral"). Debtor stipulates that Bloomingdale properly filed a UCC-1 with the Secretary of State of Illinois to perfect its security interest in the Debtor's property to wit: File number 4367907, recorded on April 9, 2001; File number 5334209, recorded on May 30, 2002; and File number 5470978 recorded on June 26, 2002.

5. Debtor believes that the balance due to Bloomingdale is approximately $3,236,300.00 (the "Indebtedness"). Debtor believes that the value of the assets securing its obligations to Bloomingdale is approximately $2,325,600.00.

6. The Debtor requires the use of its cash collateral as it is defined in Section 363(a) of the Bankruptcy Code and requests authorization of this Court to utilize the cash collateral pursuant to the provisions of Section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's anticipated expenses for the month of July 2005 is attached hereto as Exhibit A. Bloomingdale has agreed to permit a variance of up to 10% of the anticipated expenses without triggering a violation of this Order.

7. The Debtor has no other source of income other than the receipts from the sales of its goods and services. If the Debtor is not given the use of cash collateral, it will be unable to retain its employees, pay for the inventory necessary to operate and have sufficient funds necessary to meet its contractual obligations. The Debtor would then be forced into a premature liquidation.

8. Bloomingdale will not be harmed by the use of cash collateral generated from the assets and proceeds thereof. As to the use thereof, the Debtor proposes that Bloomingdale be

granted replacement liens upon the assets in Debtor's possession subsequent to the filing of the Chapter 11 petition to the extent of the collateral utilized. In addition, as adequate protection, Debtor proposes to make monthly adequate protection payments to Bloomingdale in the amount of $23,000.00 and to grant Bloomingdale a replacement lien upon the proceeds from assets Debtor acquires subsequent to the filing of the Chapter 11 petition to the extent that the collateral is utilized.

9. The use of collateral pledged to Bloomingdale will cause little, if any, harm to Bloomingdale. Conversely, the harm to the Debtor will be substantial because the use of cash collateral is essential to its status as a going concern. The Debtor further believes that Bloomingdale is fully protected for the value of its lien provided by a replacement lien to the extent of collateral utilized.

10. The Debtor further acknowledges and agrees that (a) the Pre-Petition Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms (except to the extent that enforcement is subject to the stay arising under §362(a) of the Bankruptcy Code); (b) no claims, offsets, defenses, or counterclaims to the Pre-Petition Obligations exists; and (c) no portion of the Pre-Petition Obligations are subordinated to the Adequate Protection Liens (as hereinafter defined) granted to Bloomingdale in accordance with the provision of this Order pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Finally the Debtor hereby waives, releases and discharges Bloomingdale, and Bloomingdale's affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Loan Agreement, the Pre-Petition Obligations, any aspect of the pre-petition relationship between Bloomingdale and

the Debtor, or any other acts or omissions by Bloomingdale, in connection with the Loan Agreement, and the Pre-Petition Obligations or pre-petition relationship with the Debtor.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This cause is a core proceeding pursuant to 28 U.S.C. 157(b)(2). Venue of the Debtor's Chapter 11 case and this Motion in this District is proper pursuant to 28 U.S.C. §1408. The notice which the Debtor provided of the final hearing on the Motion was sufficient and appropriate under the circumstances of this case, and satisfies the requirement of Bankruptcy Rule 4001.

IT IS HEREBY ORDERED that:

1. **Authorization to Use Cash Collateral**. The Motion is granted. the debtor is hereby authorized to use Bloomingdale's Cash Collateral, in the ordinary course of business in accordance with the provision of this Order and the budget (the "Approved Budge") attached hereto as **Exhibit A**. Specifically, Debtor is authorized to make adequate protection payments specified in Exhibit A. For each month subsequent to July 2005, the Debtor shall submit to Bloomingdale, via facsimile or e-mail, a new budget for approval no later than ten days before the beginning of that month. If Bloomingdale does not object to this budget within 7 days, it will be deemed approved without need for Court approval.

2. **No Need for Further Actions to Perfect Security Interests.** This Order shall be deemed to be and shall constitute a loan and security agreement under the application provision of the UCC in effect from time to time. The security interests and liens granted to Bloomingdale by this Order shall be deemed perfected upon entry of this Order without the necessity of filing or recording by any person of any documents or other instruments otherwise required to be filed

under applicable non-bankruptcy law for the recording of mortgages or the perfection of security interests or liens, with such validity and perfection being binding upon a successor or any subsequently appointed trustee in any proceedings under any chapter of the Code, and upon any and all of the creditors of the Debtor who have extended, or who may hereafter extend, credit to the Debtor, or who assert a claim of any nature or in any manner whatsoever in this bankruptcy case or any superseding bankruptcy case of the Debtor, whether or not notice of the filing of this bankruptcy case has been filed in any county, parish, or any political or administrative subdivision in which the assets of the Debtor are or may be located. Notwithstanding the foregoing, Debtor shall execute any other security agreements and supporting documents if requested to do so by Bloomingdale to document the post-petition lending arrangements herein provided and permitted. The Debtor shall cooperate with Bloomingdale in executing such other documentation, including without limitation, new promissory notes, as Bloomingdale deems reasonably necessary to effectuate the terms of this Order.

3.    **Grant of Replacement Lien/Adequate Protection Payments.** As adequate protection for the use of its Cash Collateral and for protection against any decline in the value of the Pre-Petition Collateral and the proceeds thereof, to the extent of, and with the same priority as its valid and perfected pre-petition liens, Bloomingdale is hereby granted valid, binding, enforceable and perfected replacement liens and security interests (collectively the "Adequate Protection Liens") upon all assets of the Debtor's estate and all proceeds, products, rents and profits thereof, upon which Bloomingdale had valid and perfected pre-petition liens and security interests subject to any valid, perfected and enforceable liens and security interests existing against such assets in favor of entities other than Bloomingdale on the Petition Date. The

Adequate Protection Liens shall secure an amount equal to the fullest extent to which a secured creditor may be entitled to adequate protection under the Bankruptcy Code (the "Adequate Protection Obligations"). The Adequate Protection Liens shall constitute a first priority lien which shall be senior to all other liens and claims, subject only to any valid, binding, enforceable and perfected liens that were senior to the Pre-Petition Liens on the Petition Date. The Adequate Protection Liens shall not be subordinated to, or made *pari passu* with any other lien under §364(d) of the Bankruptcy Code or otherwise, and without Bloomingdale's consent, the Debtor shall not seek authority to grant liens in either the Pre-Petition Collateral or any property of the estate to any other entity pursuant to §364(d) of the Bankruptcy Code or otherwise, which liens are senior to, or *pari passu* with, either the Pre-Petition Liens or the Adequate Protection Liens.

4. **Statutory Fees/Section 507(b) Surcharge.**

    a. Anything in this Order to contrary notwithstanding, the priorities, liens and security interests granted herein to Bloomingdale shall be subordinate to only the following:

        i. Amounts payable to the Untied States Trustee pursuant to 28 U.S.C. §1930(a)(6); and

        ii. Administrative expenses pursuant to §507(a)(1) of the Bankruptcy Code, owed to counsel for the Debtor allowed under §503(b) of the Bankruptcy Code to the extent of $15,000.00.

    b. To the extent that adequate protection granted to Bloomingdale by the terms of this Order proves inadequate, including, without limitation, to the extent that the value of Bloomingdale' collateral diminishes for any reason during the pendency of this case or any superseding case under Chapter 7 of the Code, Bloomingdale shall have a priority claim pursuant

to §507(b) of the Bankruptcy Code, which claim shall have priority over every other claim allowable under §§507(a)(1) and 726(b) of the Bankruptcy Code.

    c.    Except as otherwise agreed by Bloomingdale in writing, neither the surcharge provisions of §506(c) of the Bankruptcy Code nor the provisions of §§552(b)(1) and (2) permitting the Court, after notice and hearing to limit the post-petition effect of Bloomingdale's pre-petition security interests based on the equities of the case, shall be imposed on Bloomingdale, the Pre-Petition Collateral, or any property which is subject to the Adequate Protection Liens.

    5.    **Survival.** The provisions of this Order shall be binding upon and inure to the benefit of the Debtor and Bloomingdale, and their respective successors and assigns retroactively to the Petition Date. The terms of this Order and the Loan Documents shall be valid and enforceable obligations of the Debtor against any subsequent Chapter 11 or Chapter 7 trustee for the Debtor. The liens and security interests granted to Bloomingdale herein shall survive conversion or dismissal of this case. Notwithstanding anything herein to the contrary, no Cash Collateral may be used by the Debtor, any statutory committee, or any other person or entity to object to or contest in any manner, or raise any defenses to, the validity, perfection, priority or enforceability of the Pre-Petition Indebtedness or the Pre-Petition Liens, or to assert or prosecute (as opposed to investigate) any action for preferences, fraudulent conveyances, other avoidance claims, equitable subordination, or any other claims or causes of action against Bloomingdale.

    6.    **Insurance.** The Debtor shall insure the Pre-petition Collateral for the full insurable replacement value thereof, on substantially the same terms, provisions and conditions provided for in the loan documents, with insurance companies acceptable to Bloomingdale and

naming Bloomingdale as loss payee on all such policies of insurance. The Debtor will provide Bloomingdale with certificates of insurance evidencing the Debtor's compliance with the insurance requirements herein provided; and Bloomingdale may purchase said insurance and charge the expense thereof to the Debtor if the Debtor fails to obtain the insurance as herein provided. Said insurance expense shall be deemed to be included in the Debtor's Adequate Protection Obligations, and Bloomingdale shall be entitled to a priority claim for said expense pursuant to Code § 507(b) if the Debtor fails to reimburse Bloomingdale for said insurance expense. Bloomingdale shall, upon reasonable notice, have the right to audit and examine the Pre-Petition Collateral and the DIP's books and records at any time during normal business hours.

7. **Plan of Reorganization or Other Subsequent Orders.** Absent prior written consent of Bloomingdale, the validity, priority and extent of the liens and security interests granted to Bloomingdale pursuant to this Order shall not be modified, altered, or affected in any manner, including, without limitation, (a) in a plan of reorganization, or (b) a subsequent order by this Court.

8. **Additional Duties of Debtor in Possession.** The Debtor shall furnish to Bloomingdale such reports as Bloomingdale may reasonably request from time to time, including, but not limited to, comparisons of amounts actually spent by the Debtor with budgeted expenses set forth in the Approved Budget.

9. **Events of Default.** Each of the following shall be and event of default ("Event of Default") under this Order: (a) spending (i) more than 110% of any line items allowed in, or (ii) for any type of expenditure not contained in, the Approved Budget; (b) Debtor's failure to

comply with any of the provisions of, or obligations imposed by, this Order, including, but not limited to, failure to comply with the Additional Duties of Debtor in Possession, as listed in paragraph 10 above; (c) the Debtor or DIP has engaged in fraud; (d) conversion of this case to a case under Chapter 7 of the Code; (e) dismissal of this case; (f) appointment of a Chapter 11 trustee; (g) any stay, reversal, vacatur, rescission or other modification of the terms of this Order which is not consented to by Bloomingdale in the exercise of its sole discretion; (h) Debtor's failure to make any of the payments to Bloomingdale prescribed in paragraph 4(b) hereof; or (i) the Debtor shall have consummated the sale of all or substantially all of its assets, or shall have been granted authority to do so, in either case, on terms not consented to by Bloomingdale in the exercise of its sole discretion. Bloomingdale also reserves the right to request termination of the Debtor's right to use the Cash Collateral at any time for other good cause shown.

10. **Termination Date and Cessation of Debtor's Authority to Use Cash Collateral.** Unless extended by the mutual written agreement of the Debtor and Bloomingdale, terminated earlier pursuant to the terms of this Order, or terminated pursuant to the confirmation of a plan pursuant to §1129 of the Bankruptcy Code, Debtor's authority to use Bloomingdale's Cash Collateral shall terminate at 11:59 p.m. Chicago time on October 31, 2005. Notwithstanding the foregoing, in the event that Debtor fails to cure an Event of Default within five days of written notice from Bloomingdale to the Debtor, the United States Trustee, and counsel to any statutory committee of unsecured creditors, that an Event of Default has occurred in accordance with the notice provisions of paragraph 9 above, Bloomingdale may, immediately upon terminate the Debtor's authority to utilize Bloomingdale's Cash Collateral and Debtor shall immediately cease using Cash Collateral.

11. **Modification of Automatic Stay**. Notwithstanding any provision of the Code, including, but not limited to, § 362, upon the occurrence of one or more of the Events of Default set forth in paragraph 9 of this Order, Bloomingdale shall have the right to exercise any of its rights and remedies hereunder, under the loan documents or under applicable law, in order to effect repayment of the Adequate Protection Obligations or to receive any amounts or remittances due hereunder, including without limitation, foreclosing upon and selling all or a portion of the Pre-Petition Collateral or any property of the estate (the "<u>Post-Petition Collateral</u>") securing the Adequate Protection Liens granted to Bloomingdale by this Order, and without any further action or approval of this Court, to exercise such rights and remedies as to all or such part of the Pre-Petition Collateral and the Post-Petition Collateral as Bloomingdale shall, in its sole discretion, elect, <u>provided, however</u>, that before Bloomingdale may exercise any of the foregoing rights and remedies Bloomingdale shall have first provided the Debtor and any statutory committee that may be appointed in this chapter 11 case with at least five (5) business days' advance written notice (which written notice must be furnished by hand, telecopier or other means reasonably intended to provide immediate delivery) of Bloomingdale's intent to exercise remedies, and provided further that the Debtor or such committee shall retain the right, to the extent of applicable law, to seek imposition of a stay under § 105 of the Code. Upon any exercise of remedies, Bloomingdale shall be entitled to apply the payments or proceeds of the Pre-Petition Collateral and the Post-Petition Collateral in such manner as it shall determine in its sole discretion, and in no event shall Bloomingdale be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Pre-Petition Collateral or the Post-Petition Collateral or otherwise.

-10-

12. **Independent Actions.** The Debtor acknowledges that the promises and actions contained herein are made and taken of their own free will and volition. In accepting the Approved Budget and any other information prepared by the Debtor and by taking any other actions pursuant to this Order, Bloomingdale shall not have any liability to any third party.

13. **Professional Fees of Bloomingdale's ~~Counsel~~ Professionals.** Bloomingdale shall be permitted to add the fees, costs, and expenses of counsel AND ITS OTHER PROFESSIONALS in connection with the Pre-Petition Obligations (including, without limitation, all such fees, costs and expenses incurred in connection with this case) to said Pre-Petition Obligations to the extent permitted under Section 506(b) of the Code, and shall be permitted to pay the reasonable fees of its professionals, without notice and a hearing. [initials: RKB, MMC]

14. **Miscellaneous Provisions.**

   a. **Force and Effect of Prepetition Documents: Conflicts.** Except as modified herein and subject to the other provisions of this Order and the Code, the loan documents shall remain in full force and effect with respect to the Pre-Petition Obligations. To the extent there exists any conflict between the Motion, the Loan Agreement and the other loan documents and the terms of this Order, this Order shall govern and control.

   b. **Modification of Stay.** The automatic stay of Code §362 is hereby modified with respect to Bloomingdale to the extent necessary to effectuate the provisions of this Order.

   c. **No Waiver.** This Order shall not constitute a waiver by Bloomingdale of any of its rights under the loan documents, the Bankruptcy Code or other applicable law, including without limitation: (1) its right to later assert that, notwithstanding the terms and provisions of this Order, its interests in the Pre-Petition Collateral lacks adequate protection within the

meaning of §§362(d) or 363(e) of the Bankruptcy Code; or (2) its right to later assert a claim under §507(b) of the Bankruptcy Code. Bloomingdale's failure, at any time or times hereafter, to require strict performance by the Debtor (or by any Trustee) of any provision of this Order shall not waive, affect or diminish any right of Bloomingdale thereafter to demand strict compliance and performance therewith. No delay on the part of Bloomingdale in the exercise of any right or remedy hereunder, or the exercise of any other right or remedy, shall be deemed a waiver of, nor shall it impair Bloomingdale's right to exercise any one or more of either its rights and remedies hereunder or under the Loan Agreement. None of the rights or remedies of Bloomingdale under this Order shall be deemed to have been suspended or waived by Bloomingdale unless such suspension or waiver is in writing, signed by a duly authorized officer of Bloomingdale, and directed to the Debtor specifying such suspension or waiver.

    d.    **"Responsible Person"**. By accepting the Approved Budget or any other budget submitted to it by the Debtor and by taking any other actions pursuant to this Order, Bloomingdale shall not: (1) be deemed to be in control of the operations of the Debtor; or (2) be deemed to be acting as a "responsible person" with respect to the operation or management of the Debtor.

    e.    **Order**. This Order shall be binding on all parties in interest in the above captioned matter and their respective successors and assigns, including, without limitation, any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If a Trustee terminates this Order, or if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order, such action shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other

benefit authorized hereby with respect to any Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order). Except as otherwise explicitly set forth in this Order, no third parties are intended to be, or shall be deemed, to be third party beneficiaries of this Order.

Dated: _____July 12, 2005_____

ENTERED:

_J. Cox_  _Jacqueline P. Cox_
U.S. Bankruptcy Judge

BENJAMIN, BERNEMAN, AND BROM, LLC
Attorney for Debtor
216 West Jackson Boulevard, Suite 330
Chicago, Illinois 60606
(312) 444-1996

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | In Chapter 11 |
| | ) | Case No 05 B 20358 |
| TARCO PRINTING CO., INC., | ) | Judge Jacqueline P. Cox |
| | ) | Motion Date: July 12, 2005 |
| Debtor. | ) | Motion Time: 10:00 a.m. |

EXHIBIT A TO FINAL APPLICATION FOR ORDER PERMITTING
DEBTOR TO PROVIDE ADEQUATE PROTECTION
TO BLOOMINGDALE BANK AND TRUST

Budget Projections for July, 2005

Projected Revenue                                           $550,000.00

| | |
|---|---:|
| Payroll | 205,000.00 |
| Utilities | 16,000.00 |
| Insurance | 32,000.00 |
| Telephone | 2,900.00 |
| Commission | 10,000.00 |
| Auto Expense | 2,000.00 |
| Rent | 32,860.00 |
| Paper | 160,000.00 |
| Plates, Blankets | 12,500.00 |
| Die Cutting (Outside Services) | 6,500.00 |
| Laminating (Outside Services) | 500.00 |
| Freight | 3,000.00 |
| Bloomingdale Bank and Trust | 23,000.00 |
| Leases | 8,000.00 |
| Chemicals | 3,000.00 |
| Ink | 7,500.00 |
| Maintenace of Plant Equipment | 1,000.00 |
| Parts for Repairs of Equipment | 1,500.00 |
| Miscellaneous supplies | 800.00 |
| Sales Tax | 8,600.00 |
| Accounting | 7,500.00 |

Total                                                       $544,160.00

Net after Expenses                                          $ 5,840.00