IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Tarco Printing Co., Inc. | ) | 05 B 20358 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

## MEMORANDUM OPINION

This matter came on to be heard on the Chapter 11 debtor-in-possession's "Motion for Leave to Sell Property Out of the Ordinary Course" to Genesis Press. The debtor-in-possession's president and sole shareholder, Jeff Reckards, testified that relief under Chapter 11 of the Bankruptcy Code was sought on May 20, 2005, because Tarco Printing Co., Inc. could not pay its bills as they became due. Its secured debt totaled approximately $3,200,000 owed to Bloomingdale Bank, while the unsecured debt totaled approximately $1,000,000.

In February 2005 Tarco paid $4500 for the services of consultant George Petrulis to seek a buyer of the debtor's business or a partner with whom the debtor could merge. Through Mr. Petrulis's efforts, the Graphics Group firm was identified; a merger was explored but not consummated. After the bankruptcy filing the Graphics Group offered to purchase the debtor-in-possession; that deal fell through when Bloomingdale Bank was not satisfied with the proposed price.

On September 8, 2005, the debtor-in-possession ran an ad in the Chicago Sun Times seeking buyers. To date no prospective buyers have materialized from that effort.

Mr. Reckards told his competitors and suppliers that the business was for sale. The debtor-in-possession's lawyer and a representative of Genesis Press, who belong to the same golf club, discussed Tarco's need to sell substantially all of its assets. In the interim Mr. Petrulis also identified the Garvey Group, Countryside Graphics, and the Thiessen Group as potential buyers or

merger partners. Mr. Petrulis's prepetition contract provided a 3% commission in the event he produced an adequate buyer.[1]

The major sale terms from the Genesis offer are as follows:

- Genesis borrows and pays the bankruptcy estate $1.7 million.

- Genesis assumes $2,940,000's worth of future lease obligations.

- Jeff Reckards receives an employment contract under which he receives a $125,000 annual salary to work as a Genesis salesman; Ben Reckards also receives an employment contract for a $10,500 salary.

Jeff Reckards and Ben Reckards handle $5 million worth of business for the debtor. Their customer list is not exclusive or highly confidential, but they are expected to bring in future business to Genesis.

Tarco Printing's secured lender, Bloomingdale Bank, has also agreed to finance the purchase by Genesis Press. Tarco owes approximately $3,200,000. The bank will receive the following payment from the bankruptcy estate: $1,700,000 cash and $900,000 to $1,000,000 in accounts receivable, for a total of $2,600,000 to $2,700,000. The bank will lose $500,000 to $600,000 but is nevertheless satisfied with the proposed deal. The bankruptcy estate would have to produce at least this difference by means of bankruptcy avoidance actions before unsecured creditors could receive any distribution.

Mr. Record produced at trial an appraisal that valued the debtor's assets at $1,300,000 forced-liquidation value.

---

[1] Mr. Petrulis was retained prepetion; however, he was not hired as a nonemployee professional by the estate postpetition, which would have required the debtor-in-possession to seek leave of court to secure his authority to render services under § 327 of the Code. Mr. Petrulis continued to act on the debtor's behalf after it sought protection of the bankruptcy system but is not seeking payment pursuant to § 330 of the Code. Although the lack of retention under § 327 would have created a compensation issue, the Court does not believe that the deficiency renders the marketing evidence inadmissible for purposes of ascertaining a fair market price for bankruptcy estate assets sold through a sale under § 363(b)(1).

The creditors' committee objects to the proposed sale under § 363(b)(1) of the Code. Its position is that the debtor and its assets have not been sufficiently marketed and that the agreed price is too low.

The Court finds that the debtor-in-possession's assets have been sufficiently marketed. Tarco's consultant has been seeking buyers and merger partners for seven months. Mr. Petrulis contacted other printing concerns of comparable size. That other such concerns did not want to purchase Tarco is not a surprise considering that even the purchaser is struggling to pay its bills. No evidence of record indicates that Tarco's assets are worth more than the deal provides. In fact, the proposed price is $400,000 more than the estimated liquidation value of $1,300,000, which tends to indicate that Tarco's estate is receiving adequate consideration for its going-concern value and goodwill.

The committee, however, contends that some of the consideration for the goodwill is actually being transferred to Tarco's two insiders rather than to the bankruptcy estate. Mr Bauman, Genesis Press's secretary/treasurer and shareholder, testified that he considered the goodwill being purchased to include the agreements of Jeff Reckards and Ben Reckards to work as salespersons for Genesis, undoubtedly to obtain some of the client base from the $5,000,000 in prior sales they previously brought to Tarco. Jeff Reckards and Ben Reckards have also agreed not to compete with Genesis Press.

While the committee's concerns are not without merit, the Court makes three observations that tend to indicate that these two insiders are not being improperly paid for the value of goodwill that actually belongs to the estate. First, these two industry professionals cannot be expected to cease working in the industry or receiving payment for services rendered. On a go-forward basis, they have a right to be considered separate entities from Tarco and to exchange services in return

for compensation. To the extent they will be receiving compensation that is reasonably equivalent to future services rendered, the deal is unobjectionable; to the extent they will be receiving a *de facto* premium in exchange for the transfer of Tarco's assets to Genesis, the deal is objectionable. This leads to the second point. The Court does not have specific evidence of what salary leading professionals in the commercial printing industry receive. However, the two insiders' salaries with Genesis, $125,000 and $10,500, are roughly the same as their actual cash salaries with the debtor Tarco prepetition. This tends to indicate that they will be compensated for services rendered and nothing else. Finally, the Court notes that the Bloomingdale Bank would have cause for objecting to any payment to the insiders in exchange for the debtor-in-possessions's goodwill, as the bank is undersecured in this case. The bank supports the instant motion to sell.

The Court leaves for another day the issue of whether the bankruptcy case should be dismissed in spite of potentially preferential payments to insiders of Tarco. The Court finds that Tarco has satisfied section 363(b)(1) of the Code, which allows sale of estate assets outside the ordinary course of business.

This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052. A separate order consistent with the opinion will be entered in compliance with Bankruptcy Rule 9021.

Date: September 22, 2005

ENTERED:

_J. P.Cox_

Jacqueline P. Cox
United States Bankruptcy Judge